# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
**Urbana Division**

| | |
|---|---|
| JACKIE L. HARDWICK, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | Case No. 10-2149 |
| BARBARA MILTON, in her individual ) | |
| capacity, and ) | |
| JOHN AND MARY E. KIRBY HOSPITAL, ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

In July 2010, Plaintiff Jackie L. Hardwick filed a Complaint (#1) against Defendant The John & Mary E. Kirby Hospital (hereinafter "Kirby Hospital") and Defendant Barbara Milton, in her individual capacity. Plaintiff alleges that Defendants discriminated against her in her employment due to her disability. She also brings claims for retaliation and intentional infliction of emotional distress. Federal jurisdiction is based on federal question pursuant to 28 U.S.C. § 1331, and this Court has supplemental jurisdiction over the pendant state law claims pursuant to 28 U.S.C. § 1391.

Defendant Kirby Hospital filed a Motion for Reconsideration, Or In The Alternative, Motion to Dismiss **(#7)**. Defendant moves this Court to reconsider its November 9, 2010, order granting Plaintiff additional time to serve defendants with the complaint. Plaintiff filed Response to Defendant's Motion for Reconsideration Or In The Alternative, Motion to Dismiss (#12). After reviewing the parties' pleadings and memoranda, this Court **DENIES** Defendant's motion for reconsideration **(#7)**. However, this Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that Defendant's alternative motion to dismiss Count III and IV of Plaintiff's complaint **(#7)** be **GRANTED**.

# I. Background

*A. Factual Background*

The following background information is taken from the complaint. Plaintiff is a former employee of Defendant Kirby Hospital. Plaintiff began working at the hospital as a nursing assistant in August 2007. In October 2008, the hospital transferred Plaintiff to Central Supply, where she worked as a purchasing clerk. In that position, Defendant Milton was Plaintiff's direct supervisor.

On January 9, 2009, Plaintiff suffered a lacunar stroke while at work. Though she resumed work several days later, she began to have difficulty with her job duties due to dizziness, blurred vision, confusion, and other symptoms related to her stroke. On January 26, 2009, Defendant Milton and Plaintiff had an employee conference, in which Defendant Milton noted that Plaintiff had problems working independently, prioritizing tasks, and staying organized. (#1-1, p. 11). Plaintiff was placed on probation for ninety days, and Defendant Milton indicated she would continuously follow up with Plaintiff during this time to discuss her progress. (#1-1, p. 11).

Around this time, Defendant Milton began making remarks to Plaintiff related to her medical condition. Defendant Milton said that Plaintiff "should be working for senior care and doing one task all day like, such a placing one pill in one container all day." (#1, p. 4). Defendant Milton indicated that Plaintiff would be disciplined for attending doctor appointments during her shift. She told Plaintiff that Plaintiff "needed to choose between her employment and her health," and stated she "did not know what was going on in [Plaintiff's] home that would make [her] feel so overwhelmed." (#1, p. 4). In February 2009, Plaintiff spoke to Gayla Hisolpe, the Human Resources manager, to complaint about this pattern of treatment. After hearing that Plaintiff had complained to Human Resources, Defendant Milton "went in to a rage," told Plaintiff she "didn't need this shit," and told Plaintiff that the hospital CEO "will know the next time you say anything about me and he will deal with it." (#1, p. 4).

On March 1, 2009, Plaintiff and Defendant Milton had a second employee conference. Defendant Milton issued a first written warning to Plaintiff for tardiness and absenteeism. In the month prior to this meeting, Plaintiff had called in sick once, called in that she would be late once, and had two doctors appointments that caused her to miss some work. Defendant Milton warned Plaintiff that if there were any further occurrences of absenteeism or tardiness, Plaintiff would be terminated. (#1-1, p. 13). On the same day, Defendant Milton issued a second written warning to Plaintiff for making errors in the daily supply list. Defendant noted seven specific incidents in the month prior to this meeting where Plaintiff had made errors, such as ordering the wrong quantity of supplies. Defendant Milton warned Plaintiff that if there were any more common errors in the daily supply list, Plaintiff would be terminated. (#1-1, p. 15.) On March 9, Defendant Milton issued a third written warning to Plaintiff for tardiness, noting she was four minutes late to work on March 3 and one minute late to work on March 4. (#1-1, p. 17).

On March 18, Plaintiff was terminated from her position. An employee conference record indicates that Plaintiff made numerous errors throughout March, such as ordering incorrect quantities of items, forgetting to do things, etc. (#1-1, p. 18). The conference record states: "At this point, daily errors with just the day to day operations in the department cannot be tolerated. The manager has to verify everything you do, double checking everything. Since hire date of October 15th, the daily tasks of ordering, restocking should have been mastered, without error, at this point. You are being terminated effective immediately." (#1-1, p. 19).

*B. Procedural Background*

The U.S. Equal Employment Opportunity Commission mailed Plaintiff Notice of Right to Sue on April 12, 2010. The notice states that a lawsuit under Title VII, the ADA, or GINA must be filed in a federal or state court within ninety days of the aggrieved person's receipt of the notice. Plaintiff asserts that she received the notice of right to sue on April 15, 2010. (#1, p. 4). Plaintiff filed her complaint on July 12, 2010, which is 91 days after the issuance of the right to sue letter, but less than 90 days after Plaintiff had received the letter.

3

Plaintiff filed her complaint on July 12, 2010. When the 120 day deadline for completing service of process had nearly passed, this Court granted Plaintiff's request for a 30 day extension. (Text Order, Nov. 9, 2010). Plaintiff filed an affidavit of service of process indicating that Defendant Kirby Hospital was served on December 8, 2010. (#4).

## II. Discussion

In Plaintiff's complaint, Plaintiff lists four counts: Count I alleges violation of the Americans with Disabilities Act, Count II alleges retaliation and unlawful discharge for exercise of rights under the Americans with Disabilities Act, Count III alleges a state law claim of intentional infliction of emotional distress, and Count IV alleges a state law claim of retaliation.

Defendant makes three arguments in its motion. First, Defendant argues this Court should reconsider its November 9, 2010, order pursuant to Rule 60(b). In the alternative, Defendant asks this Court to dismiss Plaintiff's state law claims for lack of subject matter jurisdiction, and to dismiss Plaintiff's claim for intentional infliction of emotional distress for failure to state a claim for which relief can be granted.

*A. Motion to Reconsider Pursuant to Rule 60(b)*

Pursuant to Federal Rule of Civil Procedure 60(b), Defendant asks this Court to reconsider its November 9, 2010, order granting Plaintiff thirty additional days to complete service of process. Rule 60(b) indicates that, on motion and just terms, a court may relieve a party from an order for certain enumerated reasons, such as mistake, newly discovered evidence, or fraud. FED. R. CIV. P. 60(b)(1-5). If the asserted ground for relief from the prior judgment does not fall within one of the specific categories enumerated in Rule 60(b)(1-5), relief may be available under the residual provision of the rule, which permits reopening a judgment for "any other reason that justifies relief." Rule 60(b)(6); *Arrietta v. Battaglia*, 461 F.3d 861, 865 (7th Cir. 2006). A motion under this "catchall" provision requires a showing of "extraordinary circumstances" justifying reopening of a final judgment. *Arrietta*, 461 F.3d at 865.

4

Defendant argues that this Court made an error in law in granting an extension for Plaintiff to complete service of process. With respect to time limits for service of process, the Rule states:

> If a defendant is not served within 120 days after the complaint is filed, the court - on motion or on its own after notice to the plaintiff - must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period . . . .

FED. R. CIV. P. 4(m).

Here, Defendant was not served within 120 days after the complaint was filed. However, the Court ordered that service be made within 30 days. In so doing, the Court did not find Plaintiff had shown good cause for its failure to complete service of process. Defendant argues that, in the absence of such a finding, the Court erred in granting the extension.

Defendant's understanding of the requirements of Rule 4(m) is incorrect. In 1993, Rule 4(m) was amended, and specifically changed to note that district courts have discretion to extend time limits for service of process, even absent a showing of good cause for failure to serve within 120 days. *Panaras v. Liquid Carbonic Indus. Corp.*, 94 F.3d 338, 339-40 (7th Cir. 1996). If good cause does not exist, "the court may, in its discretion, either dismiss the action without prejudice or direct that service be effected within a specified time." *Id.* at 340. Thus, "absent a showing of good cause, a district court must still consider whether a permissive extension of time is warranted." *Id.* at 340.

As such, there has been no mistake that would justify relieving Defendant from the Court's November 9 order. None of the enumerated grounds of Rule 60(b) for reconsidering an order are present here. Defendant does not point to any extraordinary circumstance that would justify relief under the catchall provision of Rule 60(b)(6). *See Arrietta*, 461 F.3d at 865. Therefore, Defendant's motion to this Court to reconsider its November 9 order extending time limits for service of process is denied.

*B. Motion to Dismiss State Law Claims Pursuant to Rule 12(b)(1)*

In the alternative, Defendant moves this Court to dismiss Counts III and IV of Plaintiff's complaint for lack of subject matter jurisdiction. When ruling on a motion to dismiss due to lack of subject matter jurisdiction, the district court must accept all well-pleaded facts as true and draw reasonable inferences in favor of the plaintiff. *Capitol Leasing Co., v. F.D.I.C.,* 999 F.2d 188, 191 (7th Cir. 1993); *Rueth v. U.S. Envtl. Prot. Agency,* 13 F.3d 227, 229 (7th Cir. 1993). The district court may look beyond the jurisdictional allegations of the complaint to determine whether subject matter jurisdiction does in fact exist. *Capitol Leasing,* 999 F.2d at 191. The party asserting federal jurisdiction bears the burden of establishing that jurisdiction does in fact exist. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003).

Defendant argues that this Court lacks subject matter jurisdiction over Plaintiff's state law claims for intentional infliction of emotional distress (hereinafter "IIED") and retaliation because these common law causes of action are preempted by the Illinois Human Rights Act (hereinafter "IHRA"). Defendant notes that IHRA preempts all state law claims seeking redress for civil rights violations within the meaning of the statute. 775 ILCS 5/8-111(C); *Krocka v. City of Chi.*, 203 F.3d 507, 516 (7th Cir. 2000); *Geise v. Phoenix Co.*, 639 N.E.2d 1273, 1276 (Ill. 1994).[1] Discrimination based on disability and retaliation are civil rights violations prohibited by IHRA. 775 ILCS 5/1-103(I); 775 ILCS 5/6-101(A). Where a common law tort claim is inextricably linked to a civil rights violation, IHRA preempts the common law claims. *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 22 (Ill. 1997). However, if the conduct would be

---

[1] Plaintiff states: "Defendant argues that Counts III and IV are preempted by the Illinois Human Rights Act. This is simply not the case." (#12, p. 5). Plaintiff further notes, without citing any authority, that "Plaintiff is no longer required to exhaust her administrative remedies as Defendant contends." (#12, p. 5). The Seventh Circuit has made it clear that a litigant who fails to press a point by supporting it with pertinent authority or by showing why it is sound despite a lack of supporting authority, forfeits the point. *Doe v. Johnson,* 52 F.3d 1448, 1457 (7th Cir. 1995). Nevertheless, for the sake of completeness, this Court will proceed to analyze the merits of Defendant's argument.

6

actionable even aside from its character as a civil rights violation, IHRA does not preempt a state law claim seeking recovery. *Krocka*, 203 F.3d at 516; *Maksimovic*, 687 N.E.2d at 23.

In determining whether a common law claim is inextricably linked to a civil rights violation, a court must consider whether the tort claim exists independently of any legal duties created by IHRA. *Krocka*, 203 F.3d at 516-17; *Blount v. Stroud*, 904 N.E.2d 1, 10 (Ill. 2009). In *Krocka*, the Seventh Circuit affirmed the district court's conclusion that, in that case, alleged comments that gave rise to a claim for IIED were inextricably linked to the plaintiff's disability discrimination claim, because the comments were offensive only to the extent that they referred to the plaintiff's disability. *Id.* at 517. The court therefore dismissed the IIED claim under Rule 12(b)(6). In contrast, the Illinois Supreme Court found a common law retaliation claim was not precluded by IHSA where the plaintiff claimed she was fired for refusing to commit perjury. *Blount*, 904 N.E.2d at 10. The court reasoned that plaintiff had a basis for her retaliatory discharge claim that was independent of any legal duties created by IHRA because the state has a public policy against perjury, embodied in the state's criminal code. *Id.*

Here, the factual basis of Plaintiff's IIED claim is that Defendant Milton made comments to her related to her disability. For example, Plaintiff alleges that Defendant Milton stated Plaintiff should be "doing one task all day like, such as placing one pill in one container all day." (#1, p. 4). Plaintiff further alleges that Defendant Milton went in to a rage after Plaintiff spoke to human resources about her relationship with Defendant Milton. Defendant Milton allegedly threatened Plaintiff, indicating that the hospital CEO would "deal with it" if Plaintiff complained about Defendant Milton again. (#1, p. 4). These specific events, and the others described in Plaintiff's complaint, are offensive only to the extent that they refer to Plaintiff's disability. Defendant Milton's alleged threat to involve the hospital CEO could only be considered outrageous because it threatens retaliation in response to Plaintiff's complaints about discrimination. To the extent Plaintiff's termination was unlawful, it would only be unlawful to the extent the termination was motivated by discrimination based on Plaintiff's disability, or constituted retaliation against Plaintiff because she opposed what she believed to be discrimination. 775 ILCS 5/1-103(I); 775 ILCS 5/6-101(A). Thus, Plaintiff's IIED claim and

7

retaliation claim do not exist independently of Defendants' alleged violation of legal duties created by IHRA. As such, this Court concludes that Plaintiff's IIED claim and common law retaliation claim are inextricably linked to alleged civil rights violations, and thus the claim is preempted by IHRA.

As such, it is clear that Plaintiff cannot bring Count III and IV of her complaint in federal court. It is unclear, however, whether these counts are properly dismissed under Rule 12(b)(1), or Rule 12(b)(6). The Court notes that Defendant brings its motion under Rule 12(b)(1), asserting this Court lacks subject matter jurisdiction over these claims. However, in *Krocka*, discussed above, the Seventh Circuit dismissed an IIED complaint due to the preemption IHRA under Rule 12(b)(6) for failure to state a claim for which relief can be granted. *Krocka*, 203 F.3d at 516-17. Our sister courts have granted motions to dismiss based on IHRA preemption under Rule 12(b)(1). *See, e.g.*, *Tucker v. Cassiday, Schade, & Gloor*, No. 99 C 4001, 2000 WL 968828, at *6 (N.D. Ill. July 13, 2000); *Riley-Jackson v. Casino Queen, Inc.*, No. 07-CV-00631, 2008 WL 2077997, at *5 (S.D. Ill. May 15, 2008); *Hill v. Village of Franklin Park*, No. 07 CV 4335, 2008 WL 686256, at *7 (N.D.Ill. Mar. 11, 2008). The parties do not discuss which standard is more appropriate, nor does the Seventh Circuit specifically address the issue. For the Court's present purposes, it is enough to note that the different standards for analyzing Rule 12(b)(1) motions versus Rule 12(b)(6) motions would not affect the Court's conclusion in this case. Either way, this Court recommends that Count III and IV of Plaintiff's complaint be dismissed without leave to file an amended complaint.

*C. Motion to Dismiss Pursuant to Rule 12(b)(6)*[2]

Defendant asks this Court to dismiss Plaintiff's claim for intentional infliction of emotional distress under Rule 12(b)(6) for failure to state a claim. Defendant notes that, in the context of an employee bringing an IIED claim against her employer, Illinois courts require a

---

[2]Though this Court has already recommended dismissal of Count III because it is preempted by IHRA, the Court addresses this argument for the sake of completeness in its report and recommendation.

high standard of "extreme and outrageous" conduct by the employer for the claim to be actionable. *Lewis v. Sch. Dist. #70*, 523 F.3d 730, 747 (7th Cir. 2008). To constitute extreme and outrageous conduct giving rise to a viable IIED claim, the employer's actions must go "well beyond the parameters of the typical workplace dispute." *Id*. (quoting *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001)). Plaintiff responds that she has met the requirements of Rule 8(a), implying that Defendant's contentions go to the merits of the claim, rather than Plaintiff's failure to state a claim.

The purpose of a motion to dismiss for failure to state a claim is to test the sufficiency of the complaint, not to decide the merits of the case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The complaint must give fair notice of what the claim is and the grounds upon which it rests. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007). However, fair notice is not enough by itself; in addition, the allegations must show that it is plausible, rather than merely speculative, that the plaintiff is entitled to relief. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008).

When considering a motion to dismiss for failure to state a claim, the Court is limited to the allegations contained in the pleadings. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). The Court must treat all well-pleaded allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *McMillan v. Collection Prof'ls, Inc.,* 455 F.3d 754, 758 (7th Cir. 2006); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (requiring plausible grounds for inferences if those inferences are to sustain a complaint). In considering the plaintiff's factual allegations, the Court should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). The application of the notice pleading standard is a context-specific task, in which the height of the pleading requirement is relative to circumstances. *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009). Furthermore, where a plaintiff voluntarily provides unnecessary facts in her complaint, a defendant may use those facts

to demonstrate that the plaintiff is not entitled to relief. *Tamayo*, 526 F.3d at 1086. A plaintiff "pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits." *Id*. (quoting *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 715 (7th Cir. 2006)).

Defendant correctly notes that the conduct required by an employer to give rise to a viable claim for IIED must be extreme and outrageous, "well beyond the parameters of the typical workplace dispute." *Lewis*, 523 F.3d at 747. However, at this stage, this Court is only concerned with whether Plaintiff has stated a claim indicating she is plausibly entitled to relief. *Tamayo*, 526 F.3d at 1083. Of the various cases cited by Defendant, two cases pertain to Rule 12(b)(6) motions.[3] First, in *Earl v. H.D. Smith Wholesale Drug Co.*, No. 08-3224, 2009 WL 1871929 (C.D. Ill. June 23, 2009) (unreported), the court dismissed a plaintiff's IIED claim where plaintiff had alleged that her employer falsely accused her of unethical conduct. The court noted that plaintiff failed to provide any details about this accusation, and that therefore plaintiff had failed to provide sufficient factual matter to state a claim that was plausible on its face. *Id.* at *4. Second, in *Schwartz v. Home Depot U.S.A., Inc.*, No. 00 C 5282, 2000 WL 1780245 (N.D. Ill. Dec. 4, 2000) (unreported), the court dismissed a plaintiff's IIED claim where plaintiffs had not alleged any extreme or outrageous conduct apart from a pattern of employment discrimination, and one isolated verbal insult.

---

[3] Defendant also relies on the following cases: *Lewis v. School Dist. #70*, 523 F.3d 730, 747 (7th Cir. 2008) (granting a defendant's motion for summary judgment on an IIED claim); *Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 567 (7th Cir. 1997) (granting a defendant's judgment notwithstanding the verdict on an IIED claim); *Welsh v. Commonwealth Edison Co.*, 713 N.E.2d 679 (Ill.App. 1999) (granting a motion to dismiss an IIED claim pursuant to Illinois' Code of Civil Procedure). Because these cases are not considered under Federal Rule of Civil Procedure 12(b)(6), this Court does not address them in detail.

Here, Defendant's authority does not support the proposition that this Court must dismiss Plaintiff's claim under Rule 12(b)(6). Defendant's cited authorities pertain to cases where a plaintiff failed to provide specific factual detail to indicate an IIED claim was plausible on its face. In contrast, Plaintiff alleges that Defendant Milton harassed her on a daily basis, and alleges several specific instances of such harassment. (#1, p. 4). Plaintiff further noted that Defendant Milton "flew in to a rage" and threatened that the hospital's CEO would "deal with it" if Plaintiff complained of harassment again. (#1, p. 4). Though these allegations, standing alone, may not be sufficient for Plaintiff to succeed on the merits of her IIED claim, this Court cannot conclude that Plaintiff has failed to provide sufficient factual matter to state a claim that is plausible on its face. Therefore, this Court recommends that Defendant's motion to dismiss Plaintiff's IIED claim for failure to state a claim be denied.

### III. Summary

For the reasons stated above, this Court **DENIES** Defendant's motion for reconsideration and recommends that the alternative motion to dismiss **(#7)** be **GRANTED** with respect to Counts III and IV of Plaintiff's complaint.

The parties are advised that any objection to this recommendation must be filed in writing with the clerk within 14 days after being served with a copy of this Report and Recommendation. See 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTER this 16th day of March, 2011.

                                                   s/ DAVID G. BERNTHAL
                                                   U.S. MAGISTRATE JUDGE