## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

_____

| | |
|---|---|
| JACKIE L. HARDWICK,         ) | |
|             ) | |
|        **Plaintiff,**    ) | |
|    **v.**                  ) | **Case No. 10-CV-2149** |
|             ) | |
| JOHN AND MARY E. KIRBY     ) | |
| HOSPITAL,            ) | |
|             ) | |
|        **Defendant.**    ) | |

### OPINION

This case is before the court for ruling on the Motion for Summary Judgment (#55) filed by Defendant, John and Mary E. Kirby Hospital. Following careful consideration of the parties' arguments and the documents provided to the court, the Motion for Summary Judgment (#55) is GRANTED.

### BACKGROUND

On July 12, 2010, Plaintiff, Jackie L. Hardwick, filed a Complaint (#1) against Defendant and Barbara Milton. Plaintiff alleged that she was hired by Defendant as a nursing assistant on August 5, 2007. Plaintiff alleged that, on October 14, 2008, she was transferred to Central Supply as a Purchasing Clerk, where she was supervised by Milton. Plaintiff alleged that she suffered a stroke on January 9, 2009, and was released to return to work on January 13, 2009. Plaintiff alleged that she began to have difficulties performing her job duties and suffered from "dizziness, blurred vision, confusion, and other symptoms." Plaintiff alleged that Defendant and Milton "refused in any way to accommodate [her] disability." Plaintiff also alleged that Milton engaged in a pattern of harassing behavior

toward Plaintiff. Plaintiff alleged that she complained about the harassment in February 2009 and was terminated on March 18, 2009. Plaintiff alleged that Defendant was liable for discrimination in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., and for retaliation in violation of the ADA. Plaintiff also claimed that Defendant and Milton were liable under Illinois law for intentional infliction of emotional distress and retaliation.

On April 6, 2011, this court entered an Order (#20). This court accepted two Reports and Recommendations (#18, #19) filed by Magistrate Judge David G. Bernthal. This court therefore granted the Motion to Dismiss filed by Milton, and Milton was terminated as a party in this case. This court also granted Defendant's Motion to Dismiss Plaintiff's state law claims, without leave to file an amended complaint.

On May 4, 2011, Defendant filed a Motion to Compel (#22). Defendant set out a long list of Plaintiff's failure to comply with the Federal Rules of Civil Procedure regarding discovery and other matters. Defendant asked for an order compelling Plaintiff to properly supplement her answers to Defendant's First Set of Interrogatories and provide all documents responsive to Defendant's First Set of Requests for Production, without objection, within seven days. On May 10, 2011, Defendant filed a Motion to Compel and Deem Facts Admitted (#24). Defendant stated that it served Plaintiff with its First Set of Requests for Admission on March 16, 2011, which was specifically tailored to address the allegations in Plaintiff's complaint. Defendant stated that Plaintiff's responses to the Requests were due no later than April 15, 2011. No responses were received by Defendant on or before April 15, 2011, and no extension of time to respond to the requests was sought by Plaintiff or

granted by Defendant. Defendant stated that, on April 19, 2011, Plaintiff provided "responses" to Defendant's Requests but, in lieu of substantively responding to the Requests, Plaintiff answered each and every Request with a general, boilerplate denial. Defendant stated that, in addition, Plaintiff stated untimely and improper general objections. Defendant also stated that attempts were made to confer with Plaintiff regarding the insufficient and improper responses. Defendant asked for an order finding that all facts and matters included in its First Set of Requests for Admission were deemed admitted.

On June 2, 2011, Defendant was allowed to file its Answer (#33) to Plaintiff's Complaint. On June 9, 2010, Judge Bernthal entered an Order (#36) and granted Defendant's Motion to Compel. Judge Bernthal ordered Plaintiff to fully answer Defendant's First Set of Interrogatories and fully respond to Defendant's First Set of Requests for Production of Documents within 14 days. On June 10, 2011, Judge Bernthal entered a Order (#37) and granted the Motion to Deem Facts Admitted. Judge Bernthal noted that there had been a serious lack of progress in the discovery phase of this litigation. Judge Bernthal stated that "[t]o the frustration of the Defendant and now the Court, the lack of progress is principally the result of the failure of the Plaintiff to participate in the required discovery in a meaningful way." Judge Bernthal noted that Plaintiff acknowledged that the response to Defendant's First Set of Requests for Admission was due April 15, 2011. Judge Bernthal stated:

> Plaintiff suggests that the rule does not mandate an order
> deeming matters admitted. In all candor, there may be cases
> where the Court would look for a way to avoid the harsh result
> permitted by the rule. This is not such a case. Given Plaintiff's

approach to her discovery obligations, the harsh result is appropriate in this case.

On July 4, 2011, Plaintiff filed a Motion to Withdraw and Otherwise Amend Answers to the Defendant's Requests for Admission (#42). On August 19, 2011, Judge Bernthal entered an Order (#51) and denied Plaintiff's Motion.

On September 2, 2011, Plaintiff filed an Objection to Judge Bernthal's Order of August 19, 2011 (#52) with this court. Plaintiff argued that Judge Bernthal did not consider the applicable rule for withdrawing facts deemed admitted. She noted that Rule 36(b) of the Federal Rules of Civil Procedure states that "the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." Plaintiff argued that her request to withdraw and amend her answers clearly met the first standard of Rule 36(b), "as it would be impossible to bring an action on the merits were all of the facts deemed admitted left on the record." Plaintiff also argued that Defendant would not be prejudiced by allowing her to amend or withdraw the admitted facts. Plaintiff argued that "[a]lthough there was a brief delay in the response to admissions, that delay should not be seen as sufficient prejudice to forbid the Plaintiff from bringing her case on the merits."

On September 22, 2011, this court entered an Opinion (#53) and denied Plaintiff's Objection. This court stated that there was no dispute that Plaintiff did not file a timely response to Defendant's First Set of Requests for Admission. Therefore, all of the factual statements set out by Defendant were admitted by Plaintiff. This court also agreed with

Judge Bernthal that Plaintiff had not presented an adequate basis for withdrawing her admissions. This court noted that Plaintiff had provided this court with no explanation for the failure to respond in a timely manner other than that her counsel had taken responsibility for the late response and errors in the pleadings and that she should not be prevented from having her case heard on the merits due to no fault of her own. This court agreed with Judge Bernthal that this was not an adequate explanation as to Plaintiff's failure to file a timely response to Defendant's Requests for Admission. This court also concluded that Plaintiff had not met her burden to show that permitting the withdrawal of the admissions "subserves the merits" because she did not provide any information showing that she had a meritorious claim which would be precluded by the admissions.

## MOTION FOR SUMMARY JUDGMENT

On December 16, 2011, Defendant filed a Motion for Summary Judgment (#55) based, to a large extent, on the facts Plaintiff admitted by failing to file a timely response to Defendant's Requests for Admission. By failing to timely respond, Plaintiff admitted the following facts:

> 1.      [She] was placed on probationary status in October 2008 in conjunction with her transfer to the new Purchasing Clerk position by the Hospital.
>
> 2.      The duties, responsibilities, and areas of competency for the Purchasing Clerk position were explained to her upon her transfer to the position, and that she fully understood and acknowledged those duties, responsibilities, and areas of

5

competency.

3.      [She] received one or more verbal or written warnings or otherwise was reprimanded in November 2008.

4.      [She] received one or more verbal or written warnings or otherwise [was] reprimanded in December 2008.

5.      [She] received one or more verbal or written warnings or otherwise [was] reprimanded in January 2009.

6.      [She] received one or more verbal or written warnings or otherwise [was] reprimanded in February 2009.

7.      [She] received one or more verbal or written warnings or otherwise [was] reprimanded in March 2009.

8.      From October 2008 through March 2009, [Plaintiff] failed to perform the duties, responsibilities, and/or areas of competency for the Purchasing Clerk position with the Hospital.

9.      During her 30-day Employee Retention Meeting in November 2008, [Plaintiff] acknowledged and agreed that:

(a)      the Purchasing Clerk position was more difficult than she had anticipated; and

(b)      she was having trouble prioritizing tasks.

10.      During her Employee Retention Meeting in January 2009, [Plaintiff] acknowledged and agreed that:

(a)      she was tardy (unexplained) on at least three

occasions from November 2008 through January 2009;

(b)     she was absent (unexplained) once in January 2009;

(c)     she inaccurately delivered medical supplies at least once in December 2008 or January 2009;

(d)     she improperly requested that someone outside of the Purchasing Department deliver medical supplies for [her] at least once in December 2008 or January 2009; and

(e)     she inaccurately reported stock levels and/or inventory of certain medical supplies on at least two occasions from December 2008 through January 2009.

11.     During [Plaintiff's] termination meeting in March 2009, she acknowledged and agreed that:

(a)     she was tardy (unexplained) on at least six occasions from February through March 2009;

(b)     she inaccurately delivered medical supplies on at least four occasions from February through March 2009; and

(c)     she inaccurately reported stock levels and/or inventory of certain medical supplies on at least three occasions from February through March 2009.

12.     [She] was released to work [by her doctor] on January 13, 2009 with no restrictions, no assistance and no accommodation.

13.     [She] never provided the Hospital with any document, communication or notice referencing or otherwise evidencing her alleged disability, handicap or condition prior to or at the time of her termination in March 2009.

14.     [She] never informed the Hospital or any of its agents or employees, including Barbara Milton, about her alleged disability, handicap or condition prior to or at the time of her termination in March 2009.

15.     [She] never communicated to the Hospital or any of its agents or employees, including Barbara Milton, about her alleged disability, handicap or condition prior to or at the time of her termination in March 2009.

16.     [She] never requested any assistance or accommodation from the Hospital for her alleged disability, handicap or condition prior to or at the time of her termination.

17.     [Plaintiff's] termination was fair, reasonable, and justified in light of her record of performance and attendance problems with the Hospital.

Defendant also provided the affidavit of Gayla Hislope in support of the Motion for Summary Judgment. Hislope stated that she is Director of Risk Management and Human Resources for Defendant. Hislope stated that Plaintiff was hired by Defendant in 2007 as a Certified Nursing Assistant. On October 14, 2008, Defendant agreed to transfer Plaintiff to

the position of Purchasing Clerk after she applied for the position. Hislope stated that, during Plaintiff's 90-day probationary period, Defendant issued multiple written and oral warnings for her poor performance and attendance issued. At the conclusion of the 90-day probationary period, Defendant extended Plaintiff's probationary employee status to further address and monitor her poor performance and attendance issues. Plaintiff was issued additional written and oral warnings for her poor performance. Hislope stated that, in March 2009, the decision was made to terminate Plaintiff's employment based upon her poor performance and attendance problems. Hislope stated that she was present at the March 18, 2009 meeting where Plaintiff was informed of her termination and could confirm that Plaintiff agreed and acknowledged the record of poor performance and attendance problems. Hislope stated that Defendant had no knowledge of Plaintiff's alleged disability during her employment with Defendant. Hislope stated that, after Plaintiff was released to work with no restrictions, Defendant did not consider Plaintiff to have any physical or mental limitations, much less a substantial limitation to a major life activity. Hislope stated that Plaintiff's employment was terminated for lawful, legitimate reasons based upon her poor performance and attendance problems.

On January 20, 2012, Plaintiff filed her Response to Defendant's Motion for Summary Judgment (#57). Plaintiff could not and did not directly contest any of the admitted facts set out by Defendant. Plaintiff nevertheless argued that the Motion should be denied. Plaintiff argued that she is disabled within the meaning of the ADA because her ability to think and concentrate was substantially impaired following her stroke in January 2009, or at the minimum she was perceived to be disabled by Defendant. Plaintiff argued that Defendant

was aware of her disability and failed to reasonably accommodate her. Plaintiff also argued that she engaged in protected activity in her meetings with Hislope in February and March 2009 and, as a result of the protected activity, Milton created a hostile environment for Plaintiff and terminated her employment.

In support of her arguments, Plaintiff filed her own affidavit, dated January 18, 2012. Plaintiff stated that she began her employment as Purchasing Clerk in October 2008 and Milton became her supervisor. Plaintiff also stated:

> 6.     While working as a Purchasing Clerk I had substantial trouble thinking, concentrating, and prioritizing tasks. I couldn't remember things, and sometimes I would misread numbers.

> 7.     Although this made the work very difficult for me, I believed that I was still capable of doing it. I told Barb Milton that I wanted to continue working as a Purchasing Clerk several times.

> 8.     This confusion and difficulty thinking caused me to make mistakes in medical supply deliveries and inventory, which lead to several write-ups and unfavorable performance evaluations during my time working as Purchasing Clerk.

> 9.     On January 8, 2009 I had a stroke. Barb Milton and several other employees were present when it occurred. I was admitted to Kirby Hospital as a patient.

> 10.    The next day, Barb Milton visited me in the hospital and

asked why I hadn't called in. I explained to her that I was preoccupied with my health and didn't know the procedure, given that I had been admitted to the hospital that I worked at.

11.     After my stroke I often had to request to miss work in order to have follow-up appointments with my doctor. Barb Milton told me on at least one occasion that if I missed work for an appointment it would be considered an occurrence.

12.     On January 26, 2009 I had an employment retention meeting with Barb Milton. I was told that I would be reprimanded if I missed work to attend doctors' appointments. I was also belittled by Barb Milton for my inability to think, focus, and concentrate. Barb Milton said that I should be working in senior care, and that my whole job should be putting one pill in a bottle all day because that is all I was able to do. Barb Milton then wrote me up for tardies dating back to November 2008.

13.     In February 2009 I met with Gayla Hislope, the Human Resources Director, and told her that I felt victimized by Barb Milton, that Barb Milton would not allow me to attend my doctors' appointments, and that Barb Milton was harassing me for my difficulties thinking and concentrating at work.

14.     The next day Barb Milton confronted me about speaking

to Gayl[a] Hislope and told me that if I ever complained about her again that Steve Tenhouse, the Hospital's CEO, would know and he would deal with it.

15. On March 4, 2009 Gayl[a] Hislope called me in to speak to her again and told me that she was upset that I had said that she wouldn't allow me to attend my doctors' appointments. I explained that I had never said that about her, and that I had said that Barb Milton wouldn't allow me to attend my appointments. I told her that I still felt as if Barb Milton didn't want me working as a Purchasing Clerk. Gayl[a] Hislope said that was because I made so many mistakes. I told her that it was because I was confused and had trouble thinking and concentrating.

16. On March 9, 2009 Barb Milton wrote me up for clocking in one minute late, when previously it was understood that I could clock in five minutes before or after my start time and would be considered on time. During this conversation Barb Milton claimed that she had never told me that I couldn't attend my doctors' appointments.

17. I do not think that Barb Milton would have written me up for that tardy if I had not spoken to Gayl[a] Hislope previously.

18. In March 2009 my employment with the Hospital was terminated as a result of the tardies that Barb Milton had

reprimanded me for, and also because of the mistakes I made because I was confused and had trouble thinking.

19.     I believe that through the majority of my employment as a Purchasing Clerk the Hospital was aware of my disability, as the hospital employees knew that I had suffered a stroke and the hospital employees regularly commented on my difficulties thinking and concentrating.

20.     I believe that with a few accommodations to my disability it wouldn't have been necessary for the Hospital to discharge me.

21.     I believe that even if I had not been one minute late on March 9, 2009, Barb Milton would have continued looking for reasons to discharge me, and that she was doing that as an act of retaliation for my choice to speak to Gayl[a] Hislope about my problems with Barb Milton.

On February 7, 2012, Defendant filed its Reply in Support of Summary Judgment (#59). Defendant argued that Plaintiff's self-serving affidavit should not be considered by this court, especially when the facts in the affidavit contradict facts which have been deemed admitted. Defendant argued that Plaintiff conducted no discovery in this case and should not be allowed to circumvent admitted facts by including contradictory facts in a self-serving affidavit. Defendant also argued that, even accepting Plaintiff's affidavit as true, her arguments still fail as a matter of law.

ANALYSIS

I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, a district court "has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994).

II. DISCRIMINATION UNDER THE ADA

To establish a prima facie case of discrimination under the ADA, a plaintiff must prove that: (1) she is a qualified individual with a disability; (2) the employer was aware of the disability; and (3) the employer failed to reasonably accommodate the disability. EEOC v. Sears, Roebuck & Co., 417 F.3d 789, 797 (7th Cir. 2005). Plaintiff argued that she is disabled within the meaning of the ADA because her ability to think and concentrate was substantially impaired following her stroke in January 2009, or at the minimum she was perceived to be disabled by Defendant. Plaintiff argued that Defendant was aware of her disability and failed to reasonably accommodate her. This court concludes that Defendant is entitled to summary judgment on Plaintiff's claim of discrimination under the ADA.

To succeed on her ADA claim, Plaintiff must demonstrate that she was an individual with a disability under the ADA. See Miller v. Ill. Dep't of Transp., 643 F.3d 190, 195 (7th Cir. 2011). Congress amended the ADA in 2008, and the amendments took effect on January 1, 2009. See Miller, 643 F.3d at 195 n.1. Therefore, because Plaintiff has claimed that she

14

became disabled following her stroke in January 2009, the 2008 amendments apply to her case. Under the ADA, as amended, the term "disability" means "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). For purposes of this definition, "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12012(2)(A). In addition, an "individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A).

Plaintiff argued that there is ample evidence of her reduced ability to concentrate and think stemming from the stroke she had on January 8, 2009. This court does not agree. There is no evidence from which a trier of fact could conclude that Plaintiff had a physical or mental impairment which "substantially limit[ed]" the major life activities of concentrating and thinking. The only evidence Plaintiff has presented is her own affidavit which stated that she told Hislope on March 4, 2009, that she was confused and had trouble thinking and concentrating. This was after her January 8, 2009 stroke. However, Plaintiff stated in her affidavit that she had trouble thinking, concentrating, and prioritizing tasks "[w]hile working as a Purchasing Clerk." Plaintiff stated that "[t]his confusion and difficulty thinking caused me to make mistakes in medical supply deliveries and inventory, which lead

to several write-ups and unfavorable performance evaluations during my time working as a Purchasing Clerk." Based upon Plaintiff's affidavit, and her admissions, it is clear that her problems with the Purchasing Clerk position started when she began the position in October 2008, months before she had her stroke. Plaintiff has made no claim that she had a disabling impairment before her stroke on January 8, 2009, yet the evidence shows that she had trouble thinking and concentrating before she suffered the stroke. Plaintiff's own affidavit does not state that her problems with thinking and concentrating became worse after her stroke. In addition, this court notes that it is undisputed that Plaintiff "was released to work [by her doctor] on January 13, 2009 with no restrictions, no assistance and no accommodation."

This court recognizes that, following the 2008 amendments to the ADA, the term "substantially limits" is to be construed broadly in favor of expansive coverage. See 29 C.F.R. § 1630.2(j)(1)(i). The regulations have been amended and provide that "the term 'substantially limits' shall be interpreted and applied to require a degree of functional limitation that is lower than the standard for 'substantially limits' applied prior to" the 2008 amendments to the ADA. 29 C.F.R. § 1630.2(j)(1)(iv). However, the regulations also provide that the "determination of whether an impairment substantially limits a major life activity requires an individualized assessment." 29 C.F.R. § 1630.2(j)(1)(iv). An impairment is a disability within the meaning of the ADA "if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630(j)(1)(ii). Plaintiff has not provided enough evidence to allow a trier of fact to make an individualized assessment of her impairment or to allow a comparison of her abilities as compared to most people in the general population. The

evidence in this case shows that Plaintiff became confused and had trouble thinking and concentrating when she started the position of Purchasing Clerk, a position with different and more challenging responsibilities. She subsequently suffered a stroke and returned to work within days with no restrictions. She then continued to have the same trouble thinking and concentrating.

Plaintiff has correctly argued that she is not required to present medical evidence to support her claim that she is disabled under the ADA. See EEOC v. Autozone, Inc., 630 F.3d 635, 643-44 (7th Cir. 2010); 29 C.F.R. § 1630.2(j)(1)(v). However, this court concludes that Plaintiff was required to provide specific, detailed evidence regarding her impairment and its effect on her abilities. See Autozone, Inc., 630 F.3d at 643-44 (explaining that it is sufficient to present evidence that the extent of the limitation caused by the impairment is substantial in terms of the person's own experience; however, "vague generalities" are not sufficient). In this case, Plaintiff has provided only vague generalities and has not shown that she had any limitations which were caused by her stroke.

This court also agrees with Defendant that Plaintiff has not shown that she was "regarded as" having a disability. Plaintiff argued that "Barb Milton's treatment of Plaintiff makes it clear that she perceived the Plaintiff to be disabled." However, based upon the admitted facts and Plaintiff's own affidavit, Plaintiff had the same problems with her position of Purchasing Clerk before and after her stroke. Based upon the evidence, there was no reason for Milton or any one else employed by Defendant to regard Plaintiff as having a disability following her stroke. It is undisputed that Plaintiff was released to return to work with no restrictions just days after the stroke and, even accepting everything in Plaintiff's

affidavit as true, there is no evidence that any of her problems with the Purchasing Clerk position were more severe after the stroke than before.

Because Plaintiff has failed to show that she was disabled under the ADA, Defendant had no obligation to accommodate her and she cannot prevail on her discrimination claim. See Squibb v. Mem'l Med. Ctr., 497 F.3d 775, 786 (7th Cir. 2007). This court additionally notes that Plaintiff's admissions preclude her from proceeding on her claim of discrimination under the ADA.

Because Plaintiff did not answer Defendant's Requests for Admission, the facts included are deemed admitted and are "conclusively established." Fed. R. Civ. P. 36(b); Fabriko Acquisition Corp. v. Prokos, 536 F.3d 605, 607 (7th Cir. 2008). Therefore, Plaintiff cannot attempt to rebut them with other evidence. Fabriko, 536 F.3d at 608. Admissions, including default admissions, must be treated as conclusively established for purposes of summary judgment, and it is error for a district court judge not to give an admission such effect. McCann v. Mangialardi, 337 F.3d 782, 788 (7th Cir. 2003); United States v. One Glock Model 21 .45 Caliber Pistol, 2011 WL 6754057, at *3 (S.D. Ill. 2011).

In this case, Plaintiff admitted that she did not inform anyone, including Milton, of her alleged disability. Based on this admission and the evidence that Plaintiff's problems with her position were the same before and after her stroke, there was no reason for Defendant to be "aware" of her alleged disability. Most importantly, Plaintiff admitted that her termination was "fair, reasonable and justified in light of her record of performance and attendance problems with the Hospital." This admission that there was an appropriate reason other than her disability for her termination is part of the evidentiary record and makes the

grant of summary judgment in favor of Defendant inevitable.  See Gabbanelli Accordions & Imports, LLC v. Ditta Gabbanelli Ubaldo Di Elio Gabbanelli, 575 F.3d 693, 696 (7th Cir. 2009).  This admission precludes any claim that she was discriminated against based on her disability in violation of the ADA.

For all the reasons stated, Defendant is entitled to summary judgment on Plaintiff's claim of discrimination in violation of the ADA.

## III.  RETALIATION UNDER THE ADA

Plaintiff claims that she can establish a prima facie case of retaliation using the direct method of proof.  To do so, Plaintiff must show: (1) she engaged in statutorily protected activity; (2) she suffered an adverse action; and (3) there is a causal connection between the protected activity and the adverse action.  Dickerson v. Bd. of Trs. Of Comty. Coll. Dist. No. 522, 657 F.3d 595, 601 (7th Cir. 2011).  In this case, Plaintiff has admitted that she did not inform anyone employed by Defendant that she had a disability and "never requested any assistance or accommodation from the Hospital for her alleged disability, handicap or condition prior to or at the time of her termination."  Plaintiff has nevertheless argued that she engaged in protected activity by speaking to Hislope in February 2009 and March 2009 about the difficulties she was having with Milton.  Plaintiff argued that, in her meetings with Hislope, she was sufficiently clear that Milton was not accommodating her disabilities to rise to the level of protected activity.   This court concludes, however, that Plaintiff's admissions preclude her from claiming she was harassed and discharged in retaliation for protected activity.

The ADA provides that "[n]o person shall discriminate against any individual because

such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). Accordingly, the "ADA prohibits employers from retaliating against employees who assert their right under the act to be free from discrimination." Dickerson, 657 F.3d at 601. Plaintiff is correct that an informal complaint may constitute protected activity. See Casna v. City of Loves Park, 574 F.3d 420, 427 (7th Cir. 2009); Viramontes v. U.S. Bancorp., 2011 WL 6780644, at *9 (N.D. Ill. 2011). However, in order to have a retaliation claim under the ADA, Plaintiff must have complained about disability discrimination. See Torres v. Weigel Broad. Co., 2012 WL 462951, at *7 (E.D. Wis. 2012); see also Dickerson, 657 F.3d at 601. If she did not, then of course Defendant could not have retaliated against her for complaining about disability discrimination. See Torres, 2012 WL 462951, at *7; cf. Viramontes, 2011 WL 6780644, at *9 (the plaintiff adequately complained about disability discrimination where she stated that she suffered from a foot injury, informed her supervisor of this injury and requested, but did not receive, accommodations from her supervisor).

As noted previously, Plaintiff has admitted that she did not inform anyone employed by Defendant that she had a disability and "never requested any assistance or accommodation from the Hospital for her alleged disability, handicap or condition prior to or at the time of her termination." Therefore, because Plaintiff admitted that she never requested any assistance from Hislope for her alleged disability, her informal complaints to Hislope about Milton were not complaints about disability discrimination. The evidence shows that Plaintiff never complained about harassment or discrimination on the basis of disability and

Defendant is entitled to summary judgment on Plaintiff's retaliation claim. <u>See</u> <u>Torres</u>, 2012 WL 462951, at *7.

 IT IS THEREFORE ORDERED THAT:

(1) Defendant's Motion for Summary Judgment (#55) is GRANTED. Judgment is entered in favor of Defendant and against Plaintiff.

(2) This case is terminated. The final pretrial conference scheduled for July 6, 2012, and the jury trial scheduled for July 23, 2012, are hereby VACATED.

ENTERED this <u>22nd</u> day of <u>February</u>, 2012.


s/MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE